# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CHAD A. GAMBLE, | CASE NO. 5:16-cv-2869 |
| PLAINTIFF, | JUDGE SARA LIOI |
| vs. | **MEMORANDUM OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| DEFENDANT. | |

Before the Court is the Report and Recommendation of Magistrate Judge Jonathan D. Greenberg (Doc. No. 19 ["R&R"]) with respect to the request of plaintiff Chad A. Gamble ("Gamble") for judicial review of the Commissioner's denial of his applications for Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) & 423, *et seq.* The R&R recommends that the Commissioner's final decision be affirmed. Plaintiff filed a single objection to the R&R (Doc. No. 20 ["Obj."]) and the Commissioner filed a response (Doc. No. 21 ["Resp."]). Upon *de novo* review and for the reasons set forth below, the Court hereby overrules Gamble's objection and accepts the R&R. The Commissioner's final decision is affirmed, and this case is dismissed and closed.

## I. PROCEDURAL BACKGROUND

Gamble applied for POD and DIB in March 2013, claiming disability due to depression, diabetes, and cellulitis.[1] (Doc. No. 12, Transcript ["Tr."] 269, 276.)[2] The applications were denied

---

[1] The record is unclear as to the disability onset date. The R&R settled on May 8, 2013, a date that does not appear to be disputed. (*See* R&R at 944 n.2.) The date is not relevant to the matters at issue now.

[2] All page number references herein are to the page identification number generated by the Court's electronic docketing system.

initially (*id.* 161-69) and upon reconsideration (*id.* 171-77), and Gamble requested a hearing before an administrative law judge ("ALJ") (*id.* 178).

On February 11, 2015, the ALJ conducted a hearing, where Gamble appeared and testified, represented by counsel. An impartial vocational expert ("VE") also testified. (*Id.* 828-72.) A supplemental hearing was conducted on June 12, 2015, during which Gamble (represented by different counsel), an impartial VE, and a medical expert ("ME") testified. (*Id.* 102-28.) On September 4, 2015, the ALJ issued a written decision, determining that Gamble was not disabled. (*Id.* 80-101.) On September 28, 2016, the Appeals Council declined further review, rendering the ALJ's decision final. (*Id.* 70-75.)

On November 25, 2016, Gamble filed this lawsuit. In his brief on the merits, Gamble assigned two errors:

(1) The ALJ's decision should be reversed because the ALJ failed to consider all of the opinion evidence.

(2) The ALJ's decision should be reversed because he improperly characterized Mr. Gamble's anxiety as not a medically determinable impairment.

(R&R at 945, citing Doc. No. 14.)

Although the R&R concluded that there was no error in either respect, Gamble now challenges only the conclusion as to the first issue. He has not challenged the outcome with respect to the second assignment of error and, therefore, has waived review of that issue.

## II. STANDARD OF REVIEW

This Court's review of the Magistrate Judge's R&R is governed by 28 U.S.C. § 636(b), which requires a *de novo* decision as to those portions of the R&R to which objection is made. Judicial review is limited to a determination of whether the ALJ applied the correct legal standards and whether there is "substantial evidence" in the record as a whole to support the decision. 42

2

U.S.C. § 405(g); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quotation marks and citation omitted). If there is substantial evidence to support the defendant's decision, it must be affirmed even if the reviewing court might have resolved any issues of fact differently and even if the record could also support a decision in plaintiff's favor. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

### III. DISCUSSION

Gamble's original brief on the merits argued for remand because "the ALJ failed to mention, consider, or even acknowledge" one of the three medical opinions of his treating psychiatrist, Dr. Roy Vellanki, regarding Gamble's mental functioning. (Doc. No. 14. at 887.) With respect to Dr. Vellanki, the ALJ stated as follows:

> Another treating physician, Roy Vellanki, M.D., submitted two medical source statements on the claimant's behalf. The first statement dated April 17, 2014, indicates the claimant began receiving mental health services in May 2013 with counseling approximately every two weeks and psychiatric services on a quarterly basis (Exhibit 9F). He diagnosed the claimant with a major depressive disorder that is recurrent with severity unspecified. He assigned the claimant a Global Assessment of Functioning score of 50, which is indicative of serious to nearly moderate mental symptoms. The claimant takes Celexa for his depression, with no reported side effects. Dr. Vellanki noted the claimant has difficult[y] with concentration and attention, as well as a depressed mood. He opined that the claimant has unlimited to "limited but satisfactory" abilities and aptitudes in the following areas: remembering work-like procedures; understanding, remembering, and carrying out very short and simple instructions; maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; making simple, work-related decisions; asking simple questions or requesting assistance; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral

extremes; responding appropriately to changes in a routine work setting; being aware of normal hazards and taking appropriate precautions; traveling in unfamiliar places; and maintaining socially appropriate behavior. He has serious limitations of his ability to sustain an ordinary routine without special supervision; perform at a consistent pace without an umeasonable number and length of rest periods; and carry out detailed instructions. The placement of some of Dr. Vellanki's checkmarks on the form indicates the claimant has "limited but satisfactory" to nearly serious limitations for handling normal work stress and completing a normal workday or workweek without interruptions from psychologically based symptoms; adhering to basic standards of neatness and cleanliness. For the psychiatric review technique, Dr. Vellanki indicates the claimant has no more than mild restriction of activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and from 1 to 3 repeated episodes of decompensation, each of extended duration, based on the placement of the checkmark on the form. Finally, according to Dr. Vellanki, the claimant has no useful ability to use public transportation, but based on the finding that the claimant has a "none to mild" limitation in activities of daily living and the relatively minor social limitations noted above, this limitation is not fully explained or supported.

In the second medical source statement dated January 8, 2015, Dr. Vellanki opined that the claimant has no limitation on his ability to understand, remember, and carry out simple instructions; mild difficulties making judgments on simple work related decisions; moderate to marked difficulties with complex instructions and judgments on such tasks; no limitations on interacting with the public or co-workers; mild limitation on interaction with supervisors; mild to moderate limitation of his ability to respond appropriately to usual work situations and to changes in a routine work setting (Exhibit 14F). He provided no narrative assessment and no information about the claimant's current symptoms, medication, or other treatment. The undersigned finds that the first medical source statement from Dr. Vellanki is not fully supported by the documented improvement from Coleman Behavioral Health and the claimant's own statements regarding the positive changes he has made in his life that have affected him physically and mentally. Finally, the undersigned notes that the two statements have significant differences. One could assume they are different because of the improvement noted in other records, but Dr. Vellanki fails to provide an explanation, which decreases the reliability of the assessment. Nonetheless, considering the second assessment is more consistent with the observations and clinical notes from the claimant's counselor at Coleman, Mr. Adam Rebh, and the undersigned gives it moderate weight. The first assessment is not fully supported and it is given little weight.

(Tr. 93-94.) The problem that Gamble points out, and that the R&R correctly recognizes, is that Dr. Vellanki submitted *three* medical statements: a Mental Impairment Questionnaire dated April

17, 2014 (*id.* 571-77 [Ex. 9F]); a Mental Impairment Questionnaire dated January 8, 2015 (*id.* 725-31 [Ex. 12F]); and a Medical Source Statement of Ability to Do Work-Related Activities (Mental) dated January 28, 2015 (*Id.* 734-36 [Ex. 14F]). The ALJ, perhaps inadvertently, blended the second and third reports, using the date from the second, but the information from the third. The ALJ never explicitly set forth or discussed any of the information in the second report, *i.e.*, Ex. 12F, although he cited its date.

Although the R&R correctly concludes that "the ALJ failed to sufficiently acknowledge Dr. Vellanki's January 8, 2015 opinion[,]" (R&R at 980), it nonetheless further concludes that this failure "constitutes harmless error." (*Id*. at 983.) Because the ALJ examined and considered testimony by Dr. Jeffrey N. Andert, a non-treating clinical psychologist who was called upon to opine based upon his review of Gamble's medical records, and since Dr. Andert had reviewed all three of Dr. Vellanki's reports, that satisfied the magistrate judge. Specifically, the R&R reasons that "the ALJ's evaluation of the medical and opinion evidence regarding Gamble's mental impairments (including Dr. Vellanki's April 2014 and January 28, 2015 opinions and Dr. Andert's hearing testimony) *indirectly attacks both the supportability of Dr. Vellanki's January 8, 2015 opinion and the consistency of that opinion with the rest of the record evidence*." (*Id.*, emphasis added.) In particular, the R&R credits the following findings of the ALJ:

> During the supplemental hearing, Jeffrey Andert, Ph.D., testified that the claimant's major depressive disorder is of moderate severity based on multiple treatment notes from Coleman Behavioral Health. . . . Dr. Andert opined that the claimant would be capable of 1-3 step tasks; would not be able to perform complex tasks or make decisions about them on a routine basis; would need a low-stress environment without high productivity or quota requirements; would be able to have contact with others more than occasionally, at approximately the 80% range, to the extent that he would essentially have only mild restriction of his social interaction. The claimant's ability to maintain concentration, persistence, or pace is not marked, and results in no more than moderate limitation. Dr. Andert further opined that the claimant is less limited than the assessment provided by Dr. Vellanki suggests. For

5

> example, Dr. Vellanki opined that the claimant has repeated episodes of decompensation, each of extended duration, which Dr. Andert did not find (Exhibit 9F). Dr. Andert also found no pattern or behavior that would result in more than one absence per month related to mental impairments, whereas Dr. Vellanki at one time believed the claimant would have more absences from work. Overall, the undersigned finds Dr. Andert's expert testimony is given substantial weight because it was based on a thorough review and discussion of the medical evidence of record. The undersigned finds the residual functional capacity in this decision is consistent with his testimony.

(*Id.* 979-80, quoting Tr. 94.)

In his objection, Gamble argues that this conclusion is legally incorrect because "[w]hat is at issue here is whether the ALJ implicitly provided good reasons to discredit Dr. Vellanki's January 8, 2015 medical source statement without even adequately recognizing the existence of those opinions." (Obj. at 999-1000.) Gamble challenges the R&R's conclusion that the ALJ's failure to recognize the second medical opinion of Dr. Vellanki was harmless error because the January 8, 2015 opinion and the April 17, 2014 opinion were "identical in many respects." (R&R at 983.) Since the April 17, 2014 opinion was discredited as not supported by the record or by Gamble's own statements regarding positive changes in his life (*id.* at 985, citing Tr. 94), the R&R concludes that the January 8, 2015 opinion would have also been rejected had it been considered. (*Id.*) Gamble argues that the magistrate judge "took on the role of fact finder[.]" (Obj. at 1001.) He further asserts that "[b]ecause of the ALJ's failure, a subsequent reviewer will never be able to understand how the January 8, 2015 medical source statement would have impacted the residual functional capacity." (*Id.*)

In opposition, the Commissioner points out that Gamble's objection never addresses the case law underpinning the R&R's conclusion that the ALJ's failure constituted harmless error. (Opp'n at 1005, citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456 (6th Cir. 2005).) Further, the Commissioner challenges

6

Gamble's assertion that, because the April 17, 2014 opinion and the January 8, 2015 opinion were nearly identical, that was reason enough to give Dr. Vellanki's opinion greater weight. The Commissioner points out as more significant the fact that the January 28, 2015 opinion was very different from both of the earlier opinions and, even more notably, that it was written a mere 20 days after the January 8th opinion. (*Id.*) Finally, the Commissioner rejects Gamble's unsupported assertion that the record shows only "vague and unquantified notions" of improvement in his condition, and points out that the ALJ actually "acknowledged the severity of [his] major depressive disorder and imposed many mental limitations in the residual functional capacity finding." (*Id.* at 1006, citing Tr. 86, 89.)

The medical opinions of treating physicians are given deference, "but they are not entitled to complete deference, and thus are not controlling if they are inconsistent with other substantial evidence or unsupported by detailed objective criteria and documentation." *Wolfe v. Soc. Sec. Admin.*, 39 F. App'x 317, 320 (6th Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)-(4)) (further citations omitted). As pointed out by Gamble, the Commissioner's regulations and related rulings require that the ALJ articulate reasons for rejection of a treating source medical opinion. The court in *Wilson*, *supra*, explained that "'[t]he requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases,' particularly in situations where a claimant knows that his physician has deemed him disabled and therefore 'might be especially bewildered when told by an administrative bureaucracy that [he] is not, unless some reason for the agency's decision is supplied.'" *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). "The requirement also ensures that the ALJ applies the treating physician rule and permits

meaningful review of the ALJ's application of the rule." *Id.* (citing *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)).[3]

In *Hall*, *supra*, the Sixth Circuit reiterated the "reason-giving" analysis of *Wilson*, noting that the Commissioner's rule "constitutes an important procedural safeguard" for claimants. *Hall*, 148 F. App'x at 461 (quotation marks and citations omitted).[4] The court noted, however, that ALJs "must use judgment in determining whether it is necessary to address each [medical] opinion separately." *Id.* at 462 (citation omitted). The court emphasized that, if the *goal* of the regulatory procedural protections is met, even if the *letter* is not met, the ALJs failure may be harmless error. *Id.* at 462-67. The court acknowledged that "when remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game." *Id.* at 463 (internal alteration, quotation marks and citation omitted).

In *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462 (6th Cir. 2006) (per curiam), the court applied *Wilson* and *Hall* in a situation where the ALJ did not explain the weight given to the opinions of two treating sources. The court declined to reverse, "because the ALJ's analysis of Nelson's mental impairments adequately addressed the opinions of [the two sources] by indirectly attacking both the supportability of those opinions and the consistency of those opinions with the record as a whole." *Id.* at 463; *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 748 (6th Cir. 2007) (when the ALJ discusses the opinion "in the context of discussing a multitude of contrary medical evidence," the regulatory goal is met) (citing *Nelson, supra*).

---

[3] In *Wilson*, the court of appeals reversed the Commissioner's decision denying DIB, even though "substantial evidence otherwise support[ed] the decision[,]" *Wilson*, 378 F.3d at 544, because the ALJ failed to give good reasons for his "summary dismissal of [the treating physician's] opinion[.]" *Id.* at 545.

[4] In *Hall*, the court also reversed due to failure of the ALJ to give good reasons for the weight given a treating source's opinion. It determined that "[t]he ALJ could not fairly decide not to address this key opinion . . . . Its importance is confirmed by the vocational expert . . . who stated that if [the physician's restrictions] were added to other findings by the ALJ, Hall could not find work." *Hall*, 148 F. App'x at 462.

The R&R here relied upon these cases to conclude that, although the ALJ had failed to explicitly address the January 8, 2015 medical source opinion, "[his] evaluation of the medical and opinion evidence regarding Gamble's mental impairments (including Dr. Vellanki's April 2014 and January 28, 2015 opinions and Dr. Andert's hearing testimony) indirectly attacks both the supportability of Dr. Vellanki's January 8, 2015 opinion and the consistency of that opinion with the rest of the record evidence." (R&R at 983.)

Gamble argues that the April 17, 2014 and January 8, 2015 reports, taken together, show the consistency of his condition over time. But this argument does not carry the day. Consistency is but one of several factors considered when determining controlling weight. *Tarter v. Colvin*, No. 5:14-CV-269-REW, 2015 WL 4972933, at *6 (E.D. Ky. Aug. 18, 2015) (the factors to determine proper weight include "longevity, treatment intensity, supportability, and consistency[]"). Anyone can write the same report twice; reports take on weight when the other factors are also met. In this case, the ALJ determined that Dr. Vellanki's January 28, 2015 opinion was more supported by objective record evidence, including Gamble's own statements regarding his improvement, than was the April 17, 2014 opinion. It is not likely that the ALJ's decision would have been different had he actually explicitly addressed the information in the January 8, 2015 report. In fact, it is likely that the ALJ would have been even more convinced of his decision, since the January 8, 2015 opinion is significantly different from the much more positive report by Dr. Vellanki written just 20 days later, on January 28, 2015 (which was also supported by the other evidence of record).

## IV. CONCLUSION

For the reasons set forth herein, Gamble's objection is overruled and the R&R is accepted. The Commissioner's decision is affirmed. This case is dismissed and closed.

**IT IS SO ORDERED**.

Dated: February 28, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**